William Baker, SBN. 157 906
MORENO & ASSOCIATES LAW FIRM, APC
2082 Otay Lakes Road, Suite 102
Chula Vista, CA 91913
Telephone: (619) 422-4885

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO MARTINEZ,<br><br>Plaintiff,<br><br>v.<br><br>CYNOSURE, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants | Case No. 20 CV 1513 MMA BGS<br><br>**AMENDED COMPLAINT**<br><br>Hon. Michael M. Anello |

Plaintiff alleges:

The Parties

    1.    Plaintiff FRANCISCO MARTINEZ ("Plaintiff") is, and at all times mentioned in this complaint was, an individual residing in San Diego County, California who is a licensed physician with a practice in Chula Vista, California.

    2.    Plaintiff is informed and believes, and on that basis alleges, that defendant CNYNOSURE, INC. (CYNOSURE) is or was a Delaware corporation located in Westford, Massachusetts.

Amended Complaint    1

3. CYNOSURE also sells items and does business throughout the United States, including in the State of California and County of San Diego.

4. The true names and capacities of the defendants named herein as DOES 1 through 10, inclusive, are unknown to Plaintiff who therefore sues them by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is negligently and proximately responsible in some manner for the occurrences alleged in this complaint, and that Plaintiff's damages were proximately caused by the defendants, and each of them.

5. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, defendants CYNOSURE, and DOES 1 through 10, inclusive, were the agents and employees of each other and acted as alleged within the scope and authority of such agency relationship, and with the knowledge and consent of each other.

Factual Background

6. CYNOSURE is or was a corporation that specialized in the marketing and sale of medical devices utilizing laser technology for cosmetic and aesthetic use.

7. CYNOSURE developed and marketed the "Sculpsure" device, which it claimed provided sculping treatments for noninvasive body contouring that painlessly and permananently reduced stubborn fat without surgery or downtime.

8. The Sculpsure machine is a peculiar apparatus with four flexible arms that uses a laser to heat adipose tissue to disrupt fat cells, which the body then eliminates.

9. At the end of each flexible arm is a rectangular plastic applicator, which the Sculpsure device operator affixes to the victim's body through belted-on plastic frames.

10. Each applicator used during a session consumes one "PAC," which are credits that must be purchased from CYNOSURE at $50 each in order to use the device.

11. Once the applicators are affixed, the Sculpture device zaps laser energy into the body to supposedly heat and break down fat cells.

12. CYNOSURE marketed and represented to the public that the Sculpsure apparatus provided a painless, non-invasive body contouring that required only one treatment and did not even require the doctor to monitor or be present the entire session.

13. CYNOSURE's representations about the Sculpsure apparatus were false; The Sculpsure treatments were painful, ineffective, and required constant monitoring.

14. Plaintiff is informed and believes that CYNOSURE duped scores or even hundreds of doctors across the United States into purchasing Sculpsure devices, which turn out to essentially be extremely expensive, but useless, ineffective, and profit-draining pain machines.

15. Prior to CYNOSURE duping him into purchasing his own Sculpsure device, plaintiff was unaware of the true nature of CYNOSURE and its Sculpsure device.

16. In April 2019, a CYNOSURE representative, Al C., came to plaintiff's medical practice promoting what he represented was an FDA-approved, noninvasive, nonsurgical body countering system that destroyed up to 24% of treated fat cells per 25-minute session.

17. Al C. represented to plaintiff that patients generally tolerated the procedure well and the sensation felt was not painful but only somewhat "spicy."

18. Al C. further represented to plaintiff that his practice needed only one new patient per month to cover the monthly cost of the Sculpsure device.

19. Al C. further represented to plaintiff that there was a high demand for noninvasive, quick, and convenient body contouring treatments and with CYNOSURE's new marketing program he would get at least one new Sculpsure patient per month, which would cover the costs of the Sculpsure device purchase.

20. Based on Al C.'s representations, plaintiff agreed to purchase a Sculpsure device and marketing package for $205,750.

21. On or about April 23, 2019, in Chula Vista, California plaintiff signed a written agreement with Cynosure, Inc. (see Exhibit A) to purchase a Sculpsure Non-Invasive Body Contouring Platform, some treatments, and a marketing package, for $205,750.

22. After purchasing the Sculpsure device, plaintiff learned that treating patients with Sculpsure was far different from the representations made by Al C. For instance, even though plaintiff's practice is located in an affluent suburb of San Diego County, there has been a dearth of Sculpsure patients, and none of the few patients he treated came from the CYNOSURE marketing package he purchased.

23. Worse, Al C.'s representation that the Sculpsure treatment was not painful but only "spicy" was a lie; the treatment was so painful that over a third of plaintiff's Sculpsure patients were not even able to endure a full treatment, and the ones who suffered through the full treatment never returned for another session.

24. CYNOSURE's suggested solution to plaintiff to resolve the unbearably painful Sculpsure treatments was to try to sucker him into purchasing Nitronox, a device that administers a nitrous oxide and oxygen analgesic system, at an unaffordable cost to his practice.

25. The result of the Sculpsure treatments was marginal and disappointing. For instance, although CYNOSURE's claims 90% patient satisfaction on their website, only three of plaintiff's nine patients who suffered through a complete treatment expressed satisfaction with the results.

26. Finally, the Sculpsure device is an unsustainable financial burden and drain on plaintiff's medical practice. The monthly payments and other costs, including

Amended Complaint    4

1. insurance, maintenance, repairs, photo subscriptions, and PAC credits are much more than the payments of the few patients who could tolerate a complete treatment, without even taking into consideration the time and costs of labor.

27. Plaintiff would have never purchased the Sculpsure device and marketing package had it not been for CYNOSURE's and Al C.s misrepresentations. He has suffered actual damages arising out of these misrepresentations and his purchase.

## FIRST CAUSE OF ACTION:
## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW
### (California Business & Professions Code § 17200, *et seq*)
### (Against All Defendants)

28. Plaintiff realleges and incorporates herein by reference as though set forth in full, each and every allegation in paragraphs 1 through 27.

29. Section 17200 of the California Unfair Competition Law (UCL) prohibits unfair competition, which "shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

30. Plaintiff and CYNOSURE are persons under the UCL, and the Plaintiff has standing to sue as a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code §§ 17201, 17204.

31. At all relevant times in this complaint, defendants violated the UCL in its transactions with plaintiff regarding the Sculpsure device and marketing package. In particular, defendants made the following material misrepresentation to plaintiff:

   a. That the Sculpsure device was an FDA-approved, noninvasive, nonsurgical body countering system that destroyed up to 24% of treated fat cells per 25-minute

session when it fact is was ineffective and most patients could not tolerate a complete treatment;

    b. That patients generally tolerated the Sculpsure procedure well and the sensation felt was not painful but only somewhat "spicy" when in fact the treatments were unbearably painful;

    c. Plaintiff's practice needed only one new patient per month to cover the monthly costs of the Sculpsure device, when in fact this would not cover the costs; and

    d. That there was a high demand for noninvasive, quick, and convenient body contouring treatments and with CYNOSURE's new marketing program he would get at least one new Sculpsure patient per month, when in fact the marketing program was useless and ineffective.

32. These misrepresentations were deceptive within the meaning of the UCL in that a reasonable person would have been deceived. In fact, plaintiff (and apparently many other doctors) was deceived in that he would not have purchased the Sculpsure device and marketing package if he had known the truth regarding the falsity of the misrepresentations.

33. Defendants' deception and misrepresentations have caused plaintiff substantial damages in that he is saddled with an expensive but useless and ineffective Sculpsure device; his reputation with his patients has been sullied; and the costs of the device are a financial burden and strain on his medical practice.

34. As a direct and proximate result of defendants' deceptive acts and practices, the Plaintiff did not receive the benefit of the bargain, suffered damages, and is entitled to punitive damages under Cal. Civ. Code § 1780, as well as attorneys' fees and costs.

/

/

Amended Complaint   6

## SECOND CAUSE OF ACTION:

## FRAUD

### (Against All Defendants)

35. Plaintiff realleges and incorporates herein by reference as though set forth in full, each and every allegation in paragraphs 1 through 34.

36. As described in the allegations above, to induce plaintiff to purchase a Sculpsure device and marketing package, defendants made numerous material misrepresentation to plaintiff, including:

    a. That the Sculpsure device was an FDA-approved, noninvasive, nonsurgical body countering system that destroyed up to 24% of treated fat cells per 25-minute session when it fact is was ineffective and most patients could not tolerate a complete treatment;

    b. That patients generally tolerated the Sculpsure procedure well and the sensation felt was not painful but only somewhat "spicy" when in fact the treatments were unbearably painful;

    c. Plaintiff's practice needed only one new patient per month to cover the monthly costs of the Sculpsure device, when in fact this would not cover the costs; and

    d. That there was a high demand for noninvasive, quick, and convenient body contouring treatments and with CYNOSURE's new marketing program he would get at least one new Sculpsure patient per month, when in fact the marketing program was useless and ineffective.

37. Based upon these representations, plaintiff agreed to purchase the Sculpsure platform, treatments, and marketing campaign.

38. The problem is that defendants' representations were false. Defendants induced plaintiff to purchase the CYNOSURE products while in fact knowing that their promises and representations were wrong or inaccurate.

39. Plaintiff justifiably relied upon the representations of defendant relating to the CYNOSURE products based upon defendants' superior knowledge and expertise; defendants also made affirmative representation and promises that CYNOSURE was an honest and reputable company; defendants are salesmen in the business of selling and marketing CYNOSURE products. Moreover, the advertisements, structure, and presentation of the CYNOSURE business insinuates that defendants are knowledgeable experts about body sculpting products, technology, and marketing.

40. After receiving and using the CYNOSURE Sculpsure platform a few times, plaintiff was dismayed to discover that defendant's various representations to him were delusive, in that: (a) his patients complained that the Sculpsure platform inflicted intense pain; (b) the patients were not satisfied with the treatment; (c) the CYNOSURE marketing campaign was completely ineffective in that it produced few or no new patients; and (d) the Sculpsure platform and marketing campaign did not pay for itself; instead it seemed to be a bottomless money pit inflicting monetary losses on plaintiff medical practice business.

41. Plaintiff is entitled to a rescission of his agreement with defendants based upon defendants' false and fraudulent misrepresentations.

42. As a direct result of defendant's acts, plaintiff has incurred actual damages, including mental and emotional distress.

### THIRD CAUSE OF ACTION:
### (Negligent Misrepresentation)
### (Against all Defendants)

43. Plaintiff realleges and incorporates herein by reference as though set forth in full, each and every allegation in paragraphs 1 through 42 of this Complaint.

44. During their conversations with plaintiff, the defendants represented to plaintiff that (a) the Sculpsure platform was effective and inflicted minimal pain on patients; (b) the marketing campaign would result in the referral of multiple patients per month; and (c) through satisfied patients and the effective marketing campaign, the platform would essentially pay for itself.

45. There existed, and now exists, no reasonable ground for defendants to believe that the representations they made to plaintiff were true.

46. Defendants made these representations to plaintiff with the intent to induce plaintiff to rely on them.

47. Plaintiff was unaware of the falsity of these representations, and justifiably acted in reliance upon them by entering into the agreement.

48. As a further direct and proximate result of the conduct of defendants, plaintiff has been damage in the amount of at least $205,750, plus interest, this amount being the amount of the unpaid claim.

49. As a further direct and proximate result of the unreasonable and bad faith conduct of defendants, and each of them, plaintiff has suffered and will continue to suffer in the future, damages in an amount to be shown at trial.

50. As a further direct and proximate result of the wrongful conduct of defendants, plaintiff has suffered mental and emotional distress, including but not limited to frustration, depression, nervousness, and anxiety and has thereby incurred general damages in a sum in excess of the jurisdiction of this Court to be determined according to proof at time of trial.

51. As a further direct and proximate result of the conduct of defendants, and each of them, plaintiff was obligated to retain legal counsel and to incur liability for costs of suit, attorney's fees, and related expenses in the amount not yet fully ascertained, but which will be submitted at time of trial.

## FOURTH CAUSE OF ACTION

### (Declaratory Judgment)

### (Against all Defendants)

52. Plaintiff realleges and incorporates herein by reference all of the allegations set forth in paragraphs 1 through 53 of the Complaint.

53. An actual controversy has arisen and now exists between plaintiffs and defendants as to the respective rights and duties relating to the purchase agreement.

54. For instance, plaintiff purportedly entered into a purchase agreement with the Delaware corporation Cynosure, Inc. (See Exhibit A) in April 2019.

55. However, plaintiff is informed that Cynosure, Inc. ceased to exist in December 2018, when it became Cynosure, LLC.

56. Plaintiff contends that the written purchase agreement (Exhibit A) with Cynosure, Inc. is invalid and void because it was entered into with a party that no longer existed. That is, Cynosure, Inc. had no capacity to enter into the purchase agreement with plaintiff in April 2019 because it did not exist at that time.

57. Another actual controversy exists about the request of plaintiff to be reimbursed for monies spent to purchase the Sculpsure platform and other items.

58. Plaintiff desires a judicial determination of their rights and duties relating to the purchase of the Sculpsure platform and related items.

59. A judicial declaration is necessary and appropriate at this time under the circumstances in order that the plaintiff may asset his rights and duties under the law.

WHEREFORE, Plaintiff demands judgment as follows:

1. A determination by the Court that the purchase agreement has been rescinded and ordering restitution of the consideration paid by plaintiff;

2. Actual economic and non-Economic Damages;

3. For a judicial declaration and order that plaintiff is entitled to rescind the purchase agreement and defendants must disgorge all consideration and moneys paid to them by plaintiff;

4. For costs of suit incurred herein, including attorney fees; and

5. For such other and further relief as the Court deems just and proper.

DATED: 3 September 2020

> Respectfully submitted,
>
> MORENO & ASSOCIATES
>
> By: /s/ *William Baker*
> WILLIAM BAKER
> Moreno & Associates
> 2082 Otay Lakes Rd, Ste. 102
> Chula Vista, CA 91913
> 619-422-4885
> william.baker@morenoandassociates.com
>
> *Attorneys for Plaintiff*

**CYNOSURE**
Customer Purchase Agreement

Cell - 619-917-3416
email - Fmartinezmd@yahoo.com

5 Carlisle Rd, Westford, MA 01886
Telephone: 978-256-4200  Fax: 978-349-7443

Date: 4/23/19

### CUSTOMER INFORMATION

Customer Name: DR. Francisco Martinez
Contact Person:
Address: 890 Eastlake Pkwy Ste. 301
City/State/Zip: Chula Vista, CA 91914
Telephone/Fax: 619-917-3416

Ultimate Ship To: Same
Telephone/Fax:

### PRODUCT DESCRIPTION

| Product | QTY | Unit Price (in USD) | Total Price (in USD) |
|---|---|---|---|
| **SCULPSURE® NON-INVASIVE BODY CONTOURING PLATFORM**<br>1060nm wavelength, 240W maximum power. Complete with on-site installation & 2 day clinical in-service, and one (1) year equipment warranty. System includes:<br>• 4 ea Laser Diode Applicators<br>• 1 Body wearables kit with attachment frames & belts<br>• Photo Positioning Mat and Backdrop<br>• 2 Bottles Lux Lotion<br>• 1 Patented Applicator for Contouring (PAC) key with 50 body PACs for clinical training<br>• Two Component Pager System (transmitter & pager) for non-emergency patient communication to the treatment staff<br>Freight | 1 | $205,750 | $205,750 |
| **Patented Applicator for Contouring (PAC) Treatments**<br>Body PAC Key with 100 PACs<br><br>Patient PoP (10k) | 1 | | |
| **SCULPSURE® SUBMENTAL PACKAGE**<br>• Water modulator hardware and system software to expand heat threshold for submental indication<br>• 1 Submental wearables kit with headgear, attachment frames, and belts<br>• 1 PAC key with 10 submental PACs for clinical training | 1 | | |
| **Patented Applicator for Contouring (PAC) Treatments**<br>Submental PAC Key with 50 PACs<br><br>Marketing Budget (20k)<br><br>Marketing Package: Printed and electronic marketing material support including: product brochures, print-ready files, web and media files, before and after photos. | 1 | | |

* Commencing 120 calendar days from the SculpSure clinical in-service date, a minimum purchase of 2 PAC Key per 90 days thereafter will need to be maintained along with compliance with Cynosure's Minimum Advertised Pricing (MAP) Policy in order to qualify for the discounted pricing ($3500 for body PAC Keys & $3750 for submental PAC KEYs).

Quoted Price Valid for 30 days from above date. Prices do not include sales, duty or excise taxes, including medical device excise taxes which are the responsibility of the Customer to pay and will be billed separately.

$ 205,750.00

### ACCEPTANCE OF AGREEMENT

By signing below, the Customer (i) is representing to Cynosure, Inc. ("Cynosure") that it has the requisite corporate authority to execute and deliver this Customer Purchase Agreement ("Agreement") and has the required licensing from the applicable state medical review board to operate the Product purchased by this Agreement, and (ii) is entering into a binding agreement for the purchase of the Product and/or services described above and accepts all of the terms and conditions as stated in this document (including the following page(s)), and (iii) hereby acknowledges receipt and understands the content of the Cynosure Minimum Advertised Price Policy. This Agreement is subject to Cynosure's terms and conditions of sale contained or referred to herein and the Customer expressly disclaims any additional and/or different terms and conditions or any terms and conditions on the Customer's purchase order. Federal law restricts the sale of the products to a licensed [illegible].

Francisco Martinez, MD            4/23/19
Customer Signature (Authorized Representative)  Date

Cynosure Area Sales Manager Signature  Date

Delivery Date:

934-SM03-004, Rev. E

Exhibit A

A 1 of 2

Cynosure, Inc.
5 Carlisle Rd
Westford, MA 01886
T: 800-886-2966
F: 978-349-7443

Terms
Prices are FCA, Westford, MA Incoterms 2000 in U.S. dollars
Payment Terms: 15% non-refundable deposit required with purchase order.
 Balance due net 30 days with prior credit approval. (VISA/Mastercharge/American Express accepted.)
 Payment is not contingent upon installation and/or acceptance.
 1.5% interest due monthly on overdue balances.
All Sales are final. Cynosure Grants no right of return.

*Due to continuing improvements, prices and specifications are subject to change without notice.*

*Cynosure reserves and the Customer grants to us, a security interest in all Products sold and all proceeds to secure the full payment.*

*Warranty Information*

Return Goods Authorization Service
Product, damaged or otherwise, will not be accepted by return shipments without prior approval from Cynosure's Customer Service Department. Authorization for return is at the sole discretion of Cynosure. All returned Product must be accompanied by a RETURN MATERIALS AUTHORIZATION number issued by Cynosure.

SculpSure® Workstation Warranty
Cynosure warrants to the original purchaser of the Product, including applicators, that the Product is free from defects in materials and workmanship, under normal use and service, for a period of twelve (12) months from the date of shipment ("SculpSure Product Warranty"). Product consumables and accessories such as water filters, attachment frames, belts, and headgear are warranted for a period of thirty (30) days from the date of shipment. Replacement parts other than the items stated above that are purchased outside of this SculpSure Product Warranty are warranted for a period of thirty (30) days from the date of shipment.

PAC Key Warranty
The warranty period for the PAC Key for use with the Product shall be for the useful life of the individual key (i.e., the remaining number of PAC treatment applications), which period shall begin on the date Cynosure ships the applicable PAC Keys to Customer (the "PAC Key Warranty Period"). Cynosure warrants to Customer during the PAC Key Warranty Period that the applicable PAC Keys will be free from defects in materials and workmanship and will substantially conform to Cynosure's written specifications applicable to the PAC Keys as such specifications exist on the date of shipment.

Cynosure is an Equal Opportunity Employer.

THE OBLIGATIONS OF CYNOSURE UNDER THIS WARRANTY ARE LIMITED, IN ITS EXCLUSIVE OPTION, TO REPAIR OR REPLACE PARTS AND MATERIALS WHICH PROVE TO BE DEFECTIVE.

These Warranties are null and void a) where the Product is unpacked, installed, serviced, and/or repaired by person(s) other than an authorized Cynosure service representative; b) where service is required due to the Customer's failure to operate or maintain the Product in an manner consistent with the specifications and guidelines set forth in the Product's operator manual; and/or c) where service is required due to attempted or actual dismantling, disassembling, alteration, and/or modification of the Product by person(s) other than an authorized Cynosure service representative.

Additional services, including, but not limited to telephone support, repair, maintenance, and refurbishment of equipment, may be purchased.

THE FOREGOING WARRANTIES ARE THE SOLE AND EXCLUSIVE WARRANTY OBLIGATIONS OF CYNOSURE, AND THE REMEDY PROVIDED ABOVE IS IN LIEU OF ANY AND ALL OTHER REMEDIES. THERE ARE NO OTHER AGREEMENTS, GUARANTEES, OR WARRANTIES, ORAL, WRITTEN, EXPRESSED, IMPLIED, OR STATUTORY, INCLUDING, WITHOUT LIMITATION, WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. CYNOSURE SHALL NOT BE LIABLE FOR LOST PROFITS OR ANY INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE OR CONSEQUENTIAL DAMAGES DUE TO ANY CAUSE WHATSOEVER EVEN IF ADVISED AS TO THE POSSIBILITY OF SUCH DAMAGES. THE CUSTOMER AGREES THAT CYNOSURE'S LIABILITY IS SO LIMITED.

This Agreement shall be governed by and construed under the substantive laws of the Commonwealth of Massachusetts. The Customer agrees to submit all disputes arising out of, or relating to, this Agreement to a court in Boston, Massachusetts.

AUTHORIZED USE
Use of the Product is permitted only for individuals who are: (i) authorized to treat patients as defined by the applicable state medical review board in the jurisdiction in which the Product is operated; or, (ii) under the supervision of such licensed physicians.
The Customer is responsible to ensure that all operators have the requisite skill required to use the Products as defined by the applicable state medical review board in the jurisdiction in which the Product is operated. Customer will, at all times, ensure that it and its employees and agents are and remain in full compliance with all federal, state, and local laws and statutes, including without limitation state medical agencies and certification boards, relating to this Agreement or the Product or their use.

The Customer acknowledges that proper operation of the Product requires use of supplies specifically engineered to meet Cynosure's compatibility, quality and performance standards. Accordingly, the Customer Agrees to use only supplies provided by or expressly authorized by Cynosure and never to buy supplies from any other supplier for use with the Product. Customer use of supplies not provided or expressly authorized by Cynosure will void all warranties and extended warranties on the Product. All future PAC Key purchased by Customer must be used in the purchased Product or other SculpSure laser systems purchased by Customer and may not be transferred to a third party for use in another SculpSure laser system.

Upon completion of training, Customer shall become an authorized provider of Cynosure products and authorized in connection therewith to use the Cynosure trademarks solely in its promotion and delivery of services utilizing Cynosure products, and in accordance with any guidelines provided by Cynosure. However, Cynosure strictly prohibits Customers from purchase and/or use of internet domain(s) consisting of or incorporating any of the Cynosure trademarks. Customer agrees not to purchase and/or use internet domain(s) consisting of or incorporating any of the Customer trademarks. Customer acknowledges Cynosure's exclusive ownership of the Cynosure trademarks and that its use thereof inures solely to Cynosure's benefit. Customer shall not attempt to obtain registration of any Cynosure trademark, and shall not debrand, rebrand or private label any Cynosure product or service.

TERMINATION OF USE

Customer acknowledges that its use of the Product (including the Software) is subject to compliance with the usage and other requirements described in this Agreement (including, without limitation, the "Authorized Use" provisions above). Customer's authorization to operate the Product and license to the software will terminate automatically in the event Customer fails to comply with such requirements. In such event, in addition to any other remedies available to Cynosure under applicable law, Customer expressly agrees that Cynosure will have the right to cease selling Products to the Customer, including but not limited to SculpSure Drives, supplies and consumables.

DATA COLLECTION

Cynosure reserves the right to collect system usage data from time to time for the purpose of running diagnostics and improving usability and performance of the Product. Data collected will not contain any patient identification information.